UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOHN TALLMAN,

                                Plaintiff,                    05-CV-0279A(Sr)

v.

THE COUNTY OF CHAUTAUQUA, et al.,

                                Defendants.

---

## DECISION AND ORDER

In accordance with 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct all further proceedings in this case, including entry of final judgment. Dkt. #27.

Currently before the Court are motions for summary judgment on behalf of the Sherman Central School District (Dkt. #31), the County of Chautauqua and Robert Berke, M.D., individually and as Commissioner of Health of the County of Chautauqua Department of Health (Dkt. #32), and John Tallman. Dkt. #36. For the following reasons, the defendants' motions for summary judgment are granted and the plaintiff's motion is denied.

## BACKGROUND

Plaintiff resides at 109 Columbia Street in the Village of Sherman, County of Chautauqua. Dkt. #36-21, ¶ 2. His residence is contiguous to an elementary and

high school commonly known as the Sherman Central School.  Dkt. #36-21, ¶ 3.  In 2003, plaintiff installed an outdoor wood boiler adjacent to his garage and approximately 50 feet from the elementary wing of the Sherman Central School.  Dkt. #32, ¶ 4; Dkt. #41-10, ¶ 29.  According to plaintiff, the outdoor wood boiler consists of a stainless steel structure, measuring approximately three-feet long, six-feet wide, and five-feet tall, with an internal firebox surrounded by a water jacket and a chimney which extends seventeen feet above the ground.  Dkt. #41-10, ¶ ¶ 13 & 17.  The heat produced from the fire warms the water which is them pumped through pipes underground and into plaintiff's residence.  Dkt. #41-10, ¶ 14.  Plaintiff began to use the boiler during the end of November, 2003.  Dkt. #32, ¶ 5.

Teachers, school employees and parents of children within the school began to complain about the smell of smoke in the cafeteria and certain classrooms on or about November 20, 2003.  Dkt. #36-6, pp.13-15, 31; Dkt. #37, ¶¶ 10-20; Dkt. # 41-4, ¶¶ 14-17.  On December 4, 2003, Pamela Warner wrote the following letter to Dr. Howard Ferguson, Jr., Superintendent of the Sherman Central Schools:

> I am writing to you regarding the severe problem with . . . the air quality in my classroom.  On Monday, December 1, [t]he smell of wood smoke in my classroom was extremely strong and bothersome.  I developed a severe headache and went home smelling very strongly of smoke.  On the two following days, the smell of smoke was not a problem.  I presume this is because of wind direction.
> Again, today, the smoke smell in my classroom was so strong that it burned my eyes and throat.  Again, I developed an immediate headache.  I requested that the air unit in my room be turned off to prevent the smoke from being drawn in.  That helped the situation somewhat, but the problem has not been eliminated.  Aside from concerns with

> my own health, I have children in my class who suffer from asthma and severe allergies. The air quality in the classroom cannot be good for them. I am not sure how these children or I will be able to tolerate the strong smoke smell throughout the winter nor how the health of these children might be adversely affected.
>
> I understand the need for the school to be a good neighbor to the surrounding families, but I also believe that the school's neighbors need to be cognizant of the need to protect the health of the children whom we serve. It is obvious that the neighbors need to heat their homes, but at what expense? I know this is not an easy problem to solve, but hopefully we can develop a creative way for everyone to be warm, comfortable, and healthy during the coming months.

Dkt. #31-4, p.12.

At Dr. Ferguson's request, the Superintendent of Buildings and Grounds, Steven Persons, sought assistance with this problem from Kevin Cole, Village of Sherman Code Enforcement. Dkt. #31-4, ¶ ¶ 33-36. Mr. Cole advised Mr. Persons that there wasn't much he could do about the situation because there was no law regulating the use of wood burning boilers. Dkt. #36-8, p.12. However, Mr. Cole contacted William R. Pippine, P.E., Regional Engineer for the New York State Department of State, who, by letter dated December 5, 2003, advised the Village of Sherman of the following:

> After numerous discussions and previous site visits, regarding the use of free standing wood fire boilers, we visited the Sherman Central School on December 4, 2003 and met with Steven Persons, Superintendent of Buildings and Grounds and Howard Ferguson, School Superintendent. The school had complained that smoke from the free standing wood fired boiler at 109 Columbia Street was smoking and causing problems for the school. Prior to the meeting, we visited 109 Columbia Street.

> I concur with your determination that the boiler at 109 Columbia has been installed and is being operated in accordance with the provisions of the New York State Fire Prevention and Building Code.  The smoke from the boiler is consistent with its correct usage.  The fuel being burned is fire wood and not inappropriate debris.
>
> It is noted that the smoke problem in the school can be attributed in part to the type of ventilation system used by the school and to turbulence caused by the down wind shadow of the school building itself.  These are design issues that should have been addressed by the school during the construction of their addition.

Dkt. #36-16.

School representatives contacted Steve Johnson at the Chautauqua County Department of Health regarding this situation in December of 2003.  Dkt. #32, ¶ 10.  Mr. Johnson advised the school to document the problem.  Dkt. #32, p.63.  In a memo dated December 8, 2003, Dr. Ferguson advised faculty at the school of the following:

> As you all may know, we have had some wood smoke in the building as a consequence of an outdoor wood stove located on property which directly abuts the property of our school district.  As a consequence of this smoke, I have been in conversation with the Chautauqua County Department of Health.  Mr. Steve Johnson of the Department of Health has been very helpful in attempting to aid our reviewing this issue.  As a result of my conversation with Mr. Johnson, I would ask those of you who are seeing effects in your classroom to begin keeping a log.  That log should include the date and time of any smoke or odor.  It should also comment on whether or not you can track the odor directly to the outside smoke source.  This, of course, can only be done to the best of your ability.  Last, please note any physical reaction which you may have as a consequence of this smoke.  If you do have a physical reaction, please indicate the date and time of this happening.

> Your logs should be given to Tracie on December 19 prior to your leaving for the Christmas holiday.

Dkt. #36-18.  During this time, the school attempted to control the problem by installing charcoal filters and switches to shut off the intake fans in approximately 19 rooms affected by the smoke, but noticed little improvement.  Dkt. #36-8, pp.7-8, 20, 29-30.

By letter dated January 8, 2004, Steven Persons, Superintendent of Buildings and Grounds, advised the Chautauqua County Department of Health that

> As of November 20, 2003, a freestanding wood-fired boiler located at 109 Columbia Street, Sherman, has been exhausting smoke which in turn is being circulated into the school.  This is occurring very often and many of the teachers and students have allergies to wood smoke and are becoming ill from the smoke.  The school needs to solve this problem as soon as possible before our students and staff develop major health problems.  Because of the close proximity of the stove to the school and the ventilator units which bring in three changes of air an hour, the smoke is circulating into too many of the classrooms.  Your looking into this matter as soon as you can would be appreciated.

Dkt. #32, p.68.  Mr. Persons forwarded this letter, as well as other correspondence he had received from the school and its personnel, to the New York State Department of Environmental Conservation ("NYSDEC"), on January 13, 2004.  Dkt. #32, p.63.  When the NYSDEC advised him that they were not taking action on the matter, Mr. Persons approached his supervisor, Dr. Robert Berke, the Chautauqua County Commissioner of Health, to discuss the appropriate course of action.  Dkt. #32, pp.64-65.

On January 26, 2004, Dr. Berke issued the following Summary Order:

> WHEREAS, the undersigned, after investigation, is of the opinion that you are causing, engaging in or maintaining a

>condition or activity which in his opinion constitutes danger to the health of the People, and that it therefore appears prejudicial to the interests of the People to delay action for fifteen (15) days until an opportunity for a hearing can be provided in accordance with the provisions of Section 12(a) of the Public Health Law, pursuant to Section 16 of the Public Health Law you are hereby:
>
>ORDERED to immediately extinguish the outdoor wood-burning furnace on your property to stop the discharge of smoke into the atmosphere, and
>
>YOU ARE FURTHER ORDERED to refrain from using the furnace until such time as you can demonstrate to the Health Department that modifications have been made that will prevent smoke from affecting the Sherman Central School.
>
>TAKE NOTICE that you are granted an opportunity to be heard and present proof that the conditions or activities described upon the attached statement do not constitute a danger to the public health and for that purpose a hearing may be held at your request at Chautauqua County Health Department, Health and Social Services Building, Fourth Floor, Mayville, New York.

Dkt. #36-17.

>By letter dated February 12, 2004, Dr. Berke advised Mr. Tallman that
>
>On January 26, 2004, I issued a Summary Order against you ordering you to immediately extinguish the outdoor wood-burning furnace on your property.  The Order was delivered on January 27 and on January 28 you visited our offices and met with Director of Environmental Health[,] Steven Johnson.  Mr. Johnson granted you a verbal extension, which I approved, for complying with the Order.
>
>On January 30 Mr. Johnson met with you at your home and discussed possible options for abating the nuisance.  He granted another extension with my approval while he pursued solutions that might be mutually acceptable.

> Unfortunately, at this time we have not identified any options for abating the nuisance other than extinguishing the furnace. Accordingly, you were advised by Mr. Johnson today that you must comply with the Order by doing so. Since the school will be closed for vacation the week of February 16-20 and will reopen on February 23, you have until February 23 to accomplish this.

Dkt. #36-19. Plaintiff returned to natural gas to heat his home, which is significantly more expensive than the wood boiler. Dkt. #32, p.23.

Plaintiff's expert witness, Richard T. Hughes, P.E., concedes that wood smoke constitutes a respiratory hazard. Dkt. #32, ¶ 19. At his deposition, Mr. Hughes agreed that it was unhealthy to have smoke residue inside the school. Dkt. #36-9, pp.32, 70-71. He also agreed that the proximity of the wood boiler to the school was a factor contributing to the strength of the emissions within the school. Dkt. #36-9, p.24. Mr. Hughes opined that increasing the stack of the chimney above the fresh air intakes would likely solve the problem at minimal expense. Dkt. #36-9, pp.29, 95. He also noted that "[if the furnace stack is at the same levels as a typical chimney (22 feet above grade) then Mr. Tallman's exhaust is no different than any other structure exhausting gas, oil or coal fumes in the community." Dkt. #36-10, p.2.

Prior to the installation of Mr. Tallman's wood burning boiler, school employees would notice a faint odor of smoke within the building approximately 3 times per year in 3 or 4 classrooms. Dkt. #36-8, pp.18, 23-24; Dkt. #37, ¶ ¶ 15-19. Since Mr. Tallman's furnace was extinguished, school employees have noticed the faint odor of smoke in about 4 classrooms on one occasion. Dkt. #36-8, pp.21-22, 25.

**DISCUSSION AND ANALYSIS**

Plaintiff's first amended complaint, commenced pursuant to 42 U.S.C. § 1983, alleges that the defendants deprived plaintiff of a protected property interest without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution and deprived plaintiff of the equal protection of the laws, in violation of the Fourteenth Amendment to the United States Constitution. Dkt. #18. Plaintiff also alleges that Section 16 of the New York State Public Health Law is unconstitutional as applied to plaintiff and as written. Dkt. #18.

Summary Judgment Standard

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party." *Thomas v. Irvin*, 981 F. Supp. 794, 799 (W.D.N.Y. 1997) (internal citations omitted). A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982. A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

Equal Protection

Plaintiff argues that he is entitled to summary judgment on his Equal Protection claim in accordance with the Supreme Court's decision in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). Dkt. #36-20, p.14. Specifically, plaintiff notes that the School District admitted that the smell of wood smoke had been noticed in the building both before and after plaintiff's use of the wood burning boiler, but no enforcement actions had been initiated against other neighbors who utilized wood burning boilers. Dkt. #36-20, p.14.

The Sherman School District argues that plaintiff is unable to establish that he was treated differently from other similarly situated individuals who operated wood burning boilers. Dkt. #31-3, p.7. The Sherman School District also notes that it

was not involved in the interpretation or application of the health code provisions which were utilized to order the wood burning boiler be extinguished.  Dkt. #31-3, p.7.

Dr. Berke and the County argue that plaintiff is not similarly situated to other neighbors with wood burning furnaces because his boiler was so much closer to the school.  Dkt. #33, p.14.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 432 U.S. 432, 439 (1985).  In *Village of Willowbrook v. Olech*, the United States Supreme Court recognized the viability of an equal protection claim brought by a "class of one" where the plaintiff alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.  528 U.S. at 1074.  Such a claim "focuses on whether the official's conduct was rationally related to the accomplishment of the work of their agency."  *Bizzarro v. Miranda*, 394 F.3d 82, 88-89 (2d Cir. 2005).  In the instant case, plaintiff has failed to proffer any evidence to demonstrate similarity between himself and other residents of the Village of Sherman. For example, plaintiff has failed to identify any other resident utilizing wood for heating fuel or to document the distance of any such resident from the school or the height of other residents' chimneys.  Even if there were other landowners similarly situated to plaintiff, plaintiff's equal protection claim must fail because there is clearly a rational basis for the Chautauqua County Health Department's decision to order plaintiff's wood

burning boiler extinguished.  Plaintiff's expert, Richard T. Hughes, agreed that wood smoke constitutes a respiratory hazard and that the proximity of the wood boiler to the school was a factor contributing to the severity of the emissions within the school.  Dkt. #36-9, pp. 24, 32, 70-71.   School personnel documented the ill effects of the smoke within their classrooms and the correlation between the severe and pervasive smell of smoke and the use of plaintiff's wood burning boiler.  Dkt. ##31-4, p.12; 36-6, pp.13-15, 31; Dkt. #37, ¶¶ 10-20; Dkt. #41-4, ¶¶ 14-17.   Accordingly, plaintiff's equal protection claim cannot proceed.

Due Process

Plaintiff argues that although Dr. Berke and the County of Chautauqua were aware of the alleged wood smoke within the school for many weeks prior to the issuance of the January 26, 2004 Summary Order, defendants chose to act pursuant to New York State Public Health Law § 16, thereby denying plaintiff pre-deprivation due process.  Dkt. #36-20, p.5.

Dr. Berke and the County of Chautauqua argue that plaintiff's interest in using an outdoor wood burning boiler does not rise to the level of a protected property right.  Dkt. #33, pp.8-9.

The Sherman Central School District notes that they are not a party to this cause of action.  Dkt. #31-3, p.5.  However, the Sherman Central School District argues that "[t]here is no constitutional right to operate an outdoor wood burning boiler,

-11-

especially a boiler that was in fact causing a potential health hazard to teachers and students." Dkt. #31-3, pp.8-9.

As the Supreme Court of the United States has repeatedly noted, "§ 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 US 386, 393-94 (1989) (internal quotations omitted). "To state a claim for relief in an action brought under § 1983, respondents must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

In the instant case, plaintiff alleges that he has a property interest in the right to lawfully use and enjoy his property. Dkt. #36, Exh. A, ¶ 34. More specifically, plaintiff asserts that he had a property interest in the installation and lawful operation of an exterior wood burning furnace to provide heat to his home and family. Dkt. #36, Exh. A, ¶ 14.

"Property interests are created, and their dimensions defined, by state law." *RR Village Assoc., Inc. v. Denver Sewer Corp.*, 826 F.2d 1197, 1201 (2d Cir. 1987), *quoting Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 538 (1985). "A state-created entitlement that cannot properly be eliminated except for cause is a property

right of which the holder may not be deprived without procedural due process." *Id.* Thus, "[i]t is well settled in this Circuit that a constitutionally protected property interest in land use regulation arises only if there is an entitlement to the relief sought by the property owner." *Gagliardi v. Village of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994).

A plaintiff has a legitimate claim of entitlement to a particular benefit if, absent the alleged denial of due process, there is a certainty or a very strong likelihood that the benefit would have been granted." *Id.* (internal quotation omitted). Conversely,

> Where a local regulator has discretion with regard to the benefit at issue, there normally is not entitlement to that benefit. An entitlement to a benefit arises only when the discretion of the issuing agency is so narrowly circumscribed as to virtually assure conferral of the benefit.

*Id.* (internal quotation omitted). Thus,

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). "Whether a state-created interest amounts to a property right of which the holder may not be deprived without procedural due process is a question of federal constitutional law." *Id.*, quoting *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978).

In support of his argument, plaintiff relies upon cases involving forfeiture of property or the encumbrance of property by liens or attachments. *See Connecticut v. Doehr,* 501 U.S. 1, 12 (1991) (attachments, liens and similar encumbrances on property

merit due process protection); *United States v. The Premises and Real Property at 4492 Livonia Rd., Livonia, New York,* 889 F.2d 1258 (2d Cir. 1989) (assuming property interest in forfeiture of real property containing a claimant's home); *Real Estate Investors Assoc. v. City of Jamestown,* No. 00-CV-815, 2004 WL 2202591(W.D.N.Y. Sept. 30, 2004)(landlords have a protected property interest requiring notice and a hearing before placement of a lien upon landlord's property for tenant's failure to pay utility bill); *Luedeke v. Village of New Paltz*, 63 F. Supp.2d 215, (N.D.N.Y. 1999) (lien and threatened tax sale on property for violation of snow removal ordinance implicated protected property right). However, the County of Chautauqua's summary order did not impose any such encumbrance upon plaintiff's property.

Plaintiff also relies upon the case of *Memphis Light* in which the United States Supreme Court determined that due process was required where state law required "good and sufficient cause" for a public utility to terminate service. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 11-12 (1978). In another public utility case, the Court of Appeals for the Second Circuit determined that homeowners possessed a protected property interest in retroactive, but not prospective, sewer rates. *RR Village Assoc.*, 826 F.2d at 1202. In other words, the homeowner was entitled to rely upon the rates promulgated by the utility at the time of service, but had no entitlement to that rate in the future. *Id.* at 1203. In the instant case, however, plaintiff was not relying upon the state to provide utility service. Rather, plaintiff is seeking to avoid use of a public utility in favor of a private wood burning boiler.

Plaintiff cites no statute or regulation which entitles him to heat his home with wood. Without such an entitlement, plaintiff cannot utilize 42 U.S.C. § 1983 to challenge the propriety of the County's use of the Summary Order to extinguish the wood burning boiler. *See Sullivan v. Town of Salem*, 805 F.2d 81, 82 (2d Cir. 1986) (federal courts "should not become zoning boards of appeal to review nonconstitutional land use determinations"). Moreover, plaintiff cannot claim a right to continue a public nuisance. *See Iannucci v. City of New York*, No. CV-02-6135, 2006 WL 1026432, at *5 (E.D.N.Y. April 19, 2006). As a result, plaintiff's due process claim cannot proceed.

New York Public Health Law § 16

In the absence of federal constitutional claims, the Court declines to exercise supplemental jurisdiction to consider plaintiff's state law claim challenging the constitutionality of New York Public Health Law § 16. *See Serby v. Town of Hempstead*, No. 04 Civ. 901, 2006 WL 2853869, at *15 (E.D.N.Y. Sept. 30, 2006).

**CONCLUSION**

Based on the foregoing, the Sherman Central School District's motion for summary judgment (Dkt. #31), is **GRANTED**; the summary judgment motion on behalf of the County of Chautauqua and Robert Berke, M.D., individually and as Commissioner of Health of the County of Chautauqua Department of Health (Dkt. #32), is **GRANTED**; and plaintiff's motion for summary judgment (Dkt. #36), is **DENIED**.

The Clerk of the Court is directed to enter judgment in favor of defendants.

**SO ORDERED.**


DATED:   Buffalo, New York
         November 30, 2007


                                          S/ H. Kenneth Schroeder, Jr.
                                          **H. KENNETH SCHROEDER, JR.**
                                          **United States Magistrate Judge**